# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

LIBERTY BELL BANK,

        Plaintiff,

v.

LUIS G. ROGERS, LEASE GROUP
RESOURCES, INC., LGR GROUP,
INC., LGR CONSORTIUM, INC.,
UNIVERSITY COPY SERVICES,
KONICA MINOLTA BUSINESS
SOLUTIONS, INC., FAX PLUS,
INC., OMNI BUSINESS SYSTEMS,
INC., and ORIGEN CAPITAL
INVESTORS III, LLC,

        Defendants.

1:13-cv-7148 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

DOUGLAS F. JOHNSON
CHARLES PATRICK MONTGOMERY
EARP COHN P.C.
20 BRACE ROAD
4TH FLOOR
CHERRY HILL, NJ 08034
    On behalf of the Receiver

JOHAN ALI ASHRAFZADEH-KIAN
DANIEL J. DUGAN (pro hac vice)
SPECTOR GADON & ROSEN PC
1635 MARKET STREET
7TH FLOOR
PHILADELPHIA, PA 19103
    On behalf of Plaintiff Liberty Bell Bank

LUIS G. ROGERS
123 COLONIAL RD
BEVERLY, NJ 08010
    Appearing pro se

CORINNE SAMLER BRENNAN
FRANK M. CORRELL, JR. (pro hac vice)
KLEHR HARRISON HARVEY BRANZBURG LLP
10000 Lincoln Drive East
Suite 201
Marlton, NJ 08053
    On behalf of Intervenor Branch Banking and Trust Company
    (successor in interest to Susquehanna Bank)

**HILLMAN**, District Judge

This matter involves a fraudulent scheme orchestrated by Defendant Luis G. Rogers through various entities that Rogers controlled, including Lease Group Resources, Inc. ("LGR"), which caused multi-million-dollar losses to Plaintiff and others. The Court appointed a Receiver to oversee the operations of LGR in light of the pervasive fraud.

Before the Court is the Receiver's Revised Report and Recommendation. The Court largely approves of the Report and Recommendation. Objections to the Report were filed by Liberty Bell Bank ("Liberty Bell"), Branch Banking and Trust Company, successor in interest to Intervenor Susquehanna Bank ("BB&T"), Luis Rogers, and non-party Jeffrey Crompe. The Court addresses these objections below.

## I. Lease No. 4964

LGR owned certain office equipment, which it leased to customers for revenue. One of Liberty Bell's objections relates to the distribution of proceeds from Lease No. 4964. With

respect to this lease, the Receiver recommends the Court find Liberty Bell has a security interest with priority over other creditors in the proceeds attributable solely to the four copiers identified in the Financing Statement it filed: one Canon OCE V6000, two Canon OCE V4000s, and one Canon OCE CS655.[1] The Receiver further recommends the Court find BB&T has a security interest with priority in the proceeds attributable to the other copiers not listed on Liberty Bell's first filed Financing Statement.

The Receiver's proposed allocation is payment of $64,063.89 to Liberty Bell and $49,596.84 to BB&T from the Lease No. 4964 proceeds. These amounts are calculated by allocating income to Liberty Bell from one OCE V6000, two OCE V4000s, and one OCE CS655 and to BB&T from the other copiers covered by the lease. Liberty Bell, however, argues it is entitled to 95.653% of the lease proceeds. BB&T does not take issue with the Receiver's proposed distribution.

Liberty Bell's objection is largely based on the disparity in the amount loaned to LGR with regard to Lease No. 4964 in comparison to BB&T. According to Liberty Bell, it loaned

---

[1] The Receiver's Report states that "the Canon OCE CS655 was misidentified by model number as a CS656, but was correctly identified by its serial number." The Court agrees with the Receiver's recommendation that this minor error does not nullify the party's priority.

$570,258.15, whereas BB&T loaned $18,000.  Liberty Bell argues the Receiver's distribution will give BB&T a windfall and will result in BB&T receiving over twice the amount of its original loan.

The Court discerns the following.  Liberty Bank issued a $570,258.15 loan to LGR.  Four copiers, and only four copiers, were identified as collateral: one OCE V6000, two OCE V4000s, and one OCE CS655.  The July 1, 2009 Financing Statement filed by Liberty Bell identified the same four copiers: one OCE V6000, two OCE V4000, and one OCE CS655.[2]

In July 2010, BB&T loaned $18,000 to finance one additional copier which was added to Lease No. 4964.  The July 8, 2010 Financing Statement filed by BB&T covered, among other things, the "assignment of proceeds" of Newport News Public Schools, "Various Model Copiers, Purchase Order #4964, cost $18,000.00." Further, as the Receiver indicates, BB&T entered into a July 25, 2006 Loan and Security Agreement which granted "a first lien and security interest in . . . all leases now existing or hereafter arising from or in connection with the leasing contracts." Together, the Court concludes these documents give BB&T priority in the copiers not identified in Liberty Bell's Financing Statement and allow BB&T to recover more than the $18,000 loan.

---

[2]    Liberty Bell filed another Financing Statement on September 25, 2013.

Liberty Bell's argument is somewhat misleading.  Although
it might appear that BB&T is receiving $49,596.84 on an $18,000
loan, the issue is not return on that loan but the scope of its
security interest related to other financial obligations owed to
BB&T.  BB&T had a broader security interest than did Liberty
Bell, covering not just certain delineated copiers but more
broadly the proceeds of the lease as a whole to be applied to
other loans extended to Plaintiff by BB&T.  The Court concludes
the Receiver's proposed distribution correctly allocates the
payments from this lease among the competing security interests.

## II. Sales Tax Payment

The Receiver's Report notes that several states' sales
taxes remain unpaid.  The Receiver determined the prudent way to
pay these taxes would be by payment from the Receivership
assets, and then charging it against the share of assets to be
distributed from the Receivership.  Liberty Bell argues the
Receiver erroneously allocated $56,043.67 to Liberty Bell for
payment of sales taxes.  Liberty Bell's objection is twofold.
First, Liberty Bell argues the responsibility for paying these
taxes is not theirs.  Second, Liberty Bell argues the Receiver
did not explain how he calculated the $56,043.67 in sales taxes.

As to Liberty Bell's first objection, the Court finds that,
where the Receiver is capable of tracing these sales taxes, they
should be traced to each creditor.  The Receiver has represented

that he is both capable of tracing the sales tax funds and that he has done so in computing the unpaid sales tax. The Court has no basis to question the representations and good faith efforts of the Receiver in this regard and Liberty Bell has offered no evidence that the Court's trust is misplaced. The Court will allow the apportionment of unpaid sales taxes as delineated by the Receiver in his Report and accompanying exhibits. The Court will not require further explanation from the Receiver regarding the apportionment of these amounts, as the Court agrees that such efforts will further delay this litigation and will result in less overall recovery among the creditors. The Court assumes that if Liberty Bell continues to contest the amount of state tax allocation that it may request the Receiver allow access to the books and records of the Company, at the expense of Liberty Bell, to evaluate the calculation.

### III. Objection of Jeffrey Crompe

The Court next addresses the objection of Jeffrey Crompe, a former employee of Rogers. Crompe has a judgment lien in the amount of $167,524.24 in the State of Washington and argues he is entitled to a distribution from the Receivership. The Receiver, however, recommends no distributions be made to Crompe, as he stands behind secured creditors and there are insufficient funds. The Receiver notes that the Washington judgment is not equivalent to a judgment which would give Crompe

a lien against property and assets existing in another state and that, even if Crompe did have a lien against the LGR property in New Jersey, his claim would stand behind the secured creditors. The Court agrees.

### IV. Objections of Luis Rogers

Finally, the Court addresses the objections of Rogers, which echo his objections to the proceedings before this Court since the start of this litigation.  He has also sought to notify the Court of "various Convertible Promissory Note holders who join [him] in [his] Objection."  The Court has reviewed the documents attached to Rogers's objection.  The Court notes that several of these individuals claim to be legitimate creditors of LGR and claim they should have been notified of the Receiver's actions.  In response, the Receiver states that the business records of LGR did not contain any information on them, and therefore the Receiver did not provide direct notice of the claims process to these individuals, although there was published notice in regional and national publications. However, the Receiver states none of these individuals filed a proof of claim.

The Receiver further points out that there is no evidence any of these individuals has a security interest in any of LGR's assets.  As there are insufficient funds to fully compensate secured creditors, these individuals would not be entitled to a

distribution.  The Court agrees.

## V. Reserves for the Receivership

The Receiver proposes $200,000 be reserved for additional
expenses.  Namely, the Receiver pinpoints "related litigation to
which the Receiver will have to respond," "the forensic
accounting and filing of tax returns," and the billing for his
Report, as well as the work and obligations that will arise out
of the filing of the Report.  The Receiver further proposes
$250,000 be reserved "for future expenditures for Receiver fees
and counsel fees in the event of an appeal or appeals," which
the Receiver views as likely.

On April 25, 2017, the Court authorized the Receiver to
prepare and file state and federal tax returns for LGR for the
tax years 2012 and all future years.  The Receiver prepared the
tax returns for 2014 and on.  However, as to the tax returns for
2012 and 2013, the Receiver determined that the preparation of
those tax returns would be extremely costly.  The Receiver filed
a Motion Authorizing Receiver's Plan for Tax Return Filing for
Tax Years 2012 and 2013.  The Receiver asked the Court to give
the Receiver discretion as to whether to file tax returns for
tax years 2012 and 2013.  The Court permitted the Receiver to
forgo the filing of tax returns for tax years 2012 and 2013.

Following this decision, the Receiver advised the Court by
way of a July 17, 2018 letter that he was amending his request

for $450,000 reserved funds to only $250,000 reserved funds.
BB&T and Liberty Bell both filed July 18, 2018 letters in
response, which expressed appreciation for the reduction but
which still maintained that $250,000 was excessive and
unjustified.

The Court agrees that a reserve of funds is appropriate in
this case.  However, the Court will not reserve the full
$250,000 requested.  The Court understands the Receiver's
anticipation of an appeal, as well as the accompanying costs of
an appeal.  However, the Court notes that there has, since the
filing of the Revised Report, been a settlement with Kyocera.
The March 21, 2017 lawsuit filed by Rogers has also been
dismissed.  Further, the Court has allowed the Receiver to forgo
filing tax returns for 2012 and 2013, and some, if not all, of
the costs associated with the preparing of the Report and the
Receiver's reply have already been awarded to the Receiver by
way of the Court's December 15, 2017 Order granting fees for the
work performed through late 2017.

BB&T asks the Court to "enter an order enjoining the
commencement or continuation of any legal proceedings against
LGR and the Receiver."  BB&T further asks the Court to withhold
no more than $50,000 for the Receiver.  Liberty Bell argues a
reserve of $30,000 is sufficient.  The Court has considered
these arguments and will allow a reserve of $100,000.  The Court

finds this amount sufficient to allow the Receiver to handle any matters that may arise in connection with this litigation, including any appeals, while allowing the creditors who have long been waiting for their distributions the largest distribution permissible at this time.[3]

## VI. Conclusion

Unless addressed herein, the Court otherwise agrees with the Receiver's recommendations. In light of the preceding determinations by the Court, the Court will order the Receiver to file a Proposed Order with the Court consistent with the determinations made by this Court herein, and otherwise consistent with the August 18, 2017 Revised Report and Recommendation of the Receiver. The Court will allow a brief period for any objections.

An appropriate Order will be entered.


Date: <u>August 29, 2018</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[3]   The Court will not at this time enter an order enjoining any legal proceedings relating to this matter.